**IDAHO MUTUAL BENEFIT ASSOCIA-TION and Old West Life Insurance Company, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 3862.**

United States District Court
D. Idaho, S. D.

Dec. 15, 1966.

Marion J. Callister, Millar & Callister, Boise, Idaho, for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., Jerome Fink, Kenneth L. MacCardle, and Gary P. Smith, Attorneys, Department of Justice, Washington, D. C. Sylvan A. Jeppesen, U. S. Atty., Jay F. Bates, Asst. U. S. Atty., Boise, Idaho, for defendant.

## MEMORANDUM OF OPINICN

FRED M. TAYLOR, Chief Judge.

This action was instituted to recover a refund on income taxes paid for the years 1956, 1957 and 1958 in the total sum of $50,170.20, together with interest from the date of payment of the taxes for each of the years in question. The jurisdiction of this court is under 28 U.S.C.A. § 1346(a) (1).

At all times material to this cause the Idaho Mutual Benefit Association (hereinafter referred to as Idaho Mutual) was organized, licensed and doing business as an insurance company within the State of Idaho with its principal place of business at Boise, Idaho. At the time of the filing of the complaint the Old West Life Insurance Company (hereinafter referred to as Old West) was a corporation organized under the laws of the State of Idaho and authorized to do business as a life insurance company within said state with its principal place of business at Boise, Idaho. Pursuant to an agreement dated April 21, 1959, and approved by the Commissioner of Insurance of the State of Idaho on May 11, 1959, all of the assets of the Idaho Mutual were transferred to Old West to be held in trust by said company for the benefit of the policyholders of Idaho Mutual. Subsequent to the filing of this action Old West merged with Union Trust Life Insurance Company which company has since merged with Missouri Fidelity Union Trust Life Insurance Company. Missouri Fidelity Union Trust Life Insurance Company is now the successor of Old West and pursuant to a stipulation of the parties to this action has been substituted as a plaintiff in lieu of Old West.

On March 14, 1957, Idaho Mutual reported and paid a tax liability of $15,-516.34 for the calendar year 1956. On March 11, 1958, Idaho Mutual reported and paid a tax liability of $15,904.05 for

the calendar year 1957, and on March 14, 1959, it reported and paid a tax liability of $16,959.62 for the calendar year 1958. All of said returns were made and filed under the provisions of Section 821 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 821).

On March 15, 1960, Old West, on behalf of Idaho Mutual, filed amended returns for each of the years 1956, 1957, and 1958, and requested a refund of taxes in the sum of $15,234.42 for the year 1956, a refund in the sum of $15,904.05 for the year 1957, and a refund in the sum of $16,959.62 for the year 1958. The amended returns were filed and said refunds were claimed on the basis that Idaho Mutual was entitled to be taxed as a life insurance company.

The provisions of Sections 801–805 of Internal Revenue Code of 1954, as amended by the Life Insurance Company Tax Act of 1955, c. 83, 70 Stat. 36, and § 2 (b) Act of March 17, 1958, P.L. 85–345, 72 Stat. 36, 37 (26 U.S.C. 1958 ed., Secs. 801–805), were applicable for the years 1956 and 1957. The provisions of Sections 801–820 of the Internal Revenue Code of 1954, as amended by the Life Insurance Company Income Tax Act of 1959, P.L. 86–69, 73 Stat. 112 (26 U.S.C. 1964 ed., Secs. 801–820) were applicable for the year 1958. It is claimed that Idaho Mutual was entitled to the exemptions provided by Section 803(b) of the Internal Revenue Code of 1954, supra, in that its "benefit fund" qualified as "life insurance reserves", under said Section 803(b) for the years in question. During the period in question, the net taxable income of a life insurance company under the provisions of said Section 803(b) was the gross income from interest, dividends, and rents, less the amount placed in its reserve fund as specified in said section.

On May 19, 1961, the claim for refunds was denied by the District Director of Internal Revenue. Thereafter, plaintiffs' complaint was timely filed.

This action has been submitted to the court for decision on the Pre-Trial Order containing a stipulation of the material facts, together with the exhibits presented and briefs filed on behalf of the parties hereto.

It is agreed that the sole issue to be determined by this court is whether the "benefit fund" of the Idaho Mutual Benefit Association for each of the years 1956, 1957, and 1958 was a "life insurance reserve" within the meaning of the provisions of 26 U.S.C. § 803(b).

During the years in question Idaho Mutual was required by Section 41–3113 of the Idaho Code (recompiled as Section 41–3013 of the Idaho Code) to maintain a "benefit fund". Said Section 41–3113 of the Idaho Code provides, among other things, as follows:

"2. The benefit fund of such association shall be used exclusively for the payment of claims arising out of policies or certificates issued by the association, costs and expenses of litigation arising out of contested claims, and taxes and assessments which may involve such funds."

During each of the three years in question Idaho Mutual made disbursements from its "benefit fund" for attorney's fees and taxes. It appears that at no time during any of these years did the "benefit fund" of Idaho Mutual ever fall below the fifty percent limitation as provided by § 41–3113 of the Idaho Code. Said taxes and attorney's fees paid out of the "benefit fund" were paid with an excess in the fund over and above the fifty percent prescribed by said statute.

In order for the "benefit fund" of Idaho Mutual to constitute a "life Insurance reserve" it had to qualify under the provisions of Title 26 U.S.C.A. § 803 (b) which provides in part as follows:

" * * * In the case of an assessment life insurance company or association, the term 'life insurance reserves' includes sums actually deposited by such company or association with State or Territorial officers pursuant to law as guaranty or reserve funds, and any funds maintained, under the charter or articles of incorporation or association (or bylaws ap-

proved by a State insurance commissioner) of such company or association, *exclusively for the payment of claims arising under certificates of membership or policies issued on the assessment plan and not subject to any other use.*" (Emphasis supplied.)

Treasury Regulations, Section 1.803–1 (c) (1959) applicable to the years in question provided as follows:

"(c) Life insurance reserves, except as otherwise provided in section 803(b), must be required by law either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory, or the District of Columbia when promulgated in the exercise of a power conferred by statute, but such requirement, without more, is not conclusive; for example, life insurance reserves do not include reserves required to be maintained to provide for the ordinary running expenses of a business which must be currently paid by every company from its income if its business is to continue, such as taxes, salaries, and unpaid brokerage; * * *."

It is contended on behalf of plaintiffs that the payment of attorney's fees, costs and expenses of litigation arising out of contested claims would not violate said Section 803(b), and in support of this contention the cases of General Life Insurance Co. v. Commissioner of Internal Revenue, 137 F.2d 185 (5th Cir. 1943); and Commissioner of Internal Revenue v. National Reserve Insurance Co., 160 F.2d 956, 958 (9th Cir. 1947) are relied on. In the case here Idaho Mutual not only paid attorney's fees, costs and expenses of litigation arising out of contested claims, but also paid taxes out of its "benefit fund" of approximately $70,-000 during the three year period.

No authority has been cited to the court or found by the court which supports the contention that the payment of taxes out of "life insurance reserves" is a proper use of such reserves under the provisions of said Section 803(b). It is immaterial that possible reduction of the "benefit fund" by the payment of attorney's fees and taxes would not reduce it below the minimum of fifty percent in these particular years, Commissioner of Internal Revenue v. National Reserve Insurance Co., supra, at page 960.

Said Section 803(b) is explicit in providing that the life insurance reserves are to be used exclusively for the payment of claims and not subject to any other use. The applicable Treasury Regulations, Section 1.803–1(c) (1959), provides that "life insurance reserves" do not include reserves required to be maintained to provide for the ordinary running expenses of a business which must be currently paid by every company from its income if its business is to continue, such as taxes, salaries and unpaid brokerage.

It appears that the "benefit fund" of Idaho Mutual met the requirements of the State statute as well as its By-Laws and that said funds were used in compliance with said statute and By-Laws. However, in order to claim the benefit of the federal statute for income tax purposes, the fund had to be maintained as provided by that statute. It is obvious that Idaho Mutual failed to comply with the clear and unambiguous language of the federal statute.

This court is of the opinion that under the facts as presented in this case the "benefit fund" maintained by Idaho Mutual for the payment of claims arising under policies issued by it and for the payment of expenses of litigation arising out of contested claims as well as taxes and assessments involving the fund did not constitute a "life insurance reserve" as that term was defined in the Internal Revenue Code of 1954.

Accordingly, plaintiffs are not entitled to have and receive anything under and by virtue of their complaint and the action must be dismissed.

Counsel for the defendant shall prepare Findings of Fact, Conclusions of Law and a proposed Judgment, serve copies of the same on counsel for the plaintiffs and submit the originals to the court.